O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER FRASER, ) | Case No. EDCV 08-00250-OP |
| ) | |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

The Court[1] now rules as follows with respect to the five disputed issues
listed in the Joint Stipulation ("JS").[2]

///

///

_____

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[2]  As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record ("AR"), and the Joint Stipulation, filed by the parties.  In
accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
determined which party is entitled to judgment under the standards set forth in 42
U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the treating psychiatrist's opinion;

2. Whether the ALJ properly considered the consultative examiner's opinion regarding Plaintiff's personality disorder with borderline traits;

3. Whether the ALJ considered the State Agency psychiatrist's opinion regarding Plaintiff's personality disorder;

4. Whether the ALJ properly considered whether Plaintiff's combination of mental disorders medically equaled a listing; and

5. Whether the ALJ properly developed the record.

(JS at 3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

2

1  Commissioner's decision must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450,
2  1452 (9th Cir. 1984).

### III.

### DISCUSSION

**A.   There Was No Error with Respect to the ALJ's Failure to Specifically Mention the Note Submitted by Plaintiff's Treating Physician.**

On February 13, 2003, Prem P. Salhotra, M.D.,[3] wrote a note recommending that due to Plaintiff's health problems, Plaintiff should have independent home study or home schooling.[4]  (AR at 128.)  Dr. Salhotra also noted that Plaintiff was diagnosed with panic attacks and an anxiety disorder. (<u>Id.</u>)  Plaintiff contends this note "is well within the period of disability and proves that the Plaintiff has had a longitudinal history of mental problems."  (JS at 3.) She contends the ALJ improperly ignored Dr. Salhotra's opinion and failed to provide specific and legitimate reasons for disregarding it.

Defendant contends that this note was not "well within the period of disability," as Plaintiff applied for disability benefits under Title XVI of the Act, not Title II, and "period of disability" is a term of art relevant only to Title II claims.  (<u>Id.</u> at 4-5.)  Thus, under Title XVI, SSI disability benefits cannot be paid for any month prior to the month of application, in this case, June 2005.  (<u>Id.</u>); 20 C.F.R. § 416.335 (2008).

In his decision, the ALJ applied this principle, noting that "[a]lthough supplemental security income is not payable prior to the month following the

---

[3]  Plaintiff does not list Dr. Salhotra as a treating physician in her disability report.  (<u>See</u> AR at 85-86 (indicating no mental health treatment prior to June 2005).)

[4]  Plaintiff testified that she graduated from high school in 2003.  (AR at 215.)

month in which the application was filed . . . , the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d)." (AR at 12.) Although the ALJ fails to specifically mention the note at issue, dated more than two years prior to Plaintiff's application for benefits, he carefully discusses the record with respect to medical documents dated 2005 and later in reaching his determination that Plaintiff has the severe impairments of anxiety and depression.

The ALJ notes that Plaintiff sought treatment for anxiety and depression in May 2005. (Id. at 15.) Sometime thereafter, Plaintiff began treatment with medication but had to stop in November 2005 due to pregnancy. (Id.) During that time, Plaintiff reported that she did not feel depressed, and in December 2005, she reported that she felt fine and was "ok without medications." (Id.) In June 2006, Plaintiff was again started on medication and reported improved depression but "some increased anxiety/panic attack symptoms." (Id.) In the following months, Plaintiff reported decreased feelings of hopelessness, more interest/energy, and improved self-esteem. (Id.) In September 2006, she reported that she was "not experiencing so much depression." (Id. at 16.) In March 2007, she reported an "improvement in her anxiety, an improved mood, and increased interaction with friends." (Id.) At that time, her global assessment of functioning ("GAF") score was found to be 62, indicating only mild symptoms. (Id.) Thus, the ALJ does not dispute that Plaintiff's mental impairments had been continuing from sometime prior to 2005, it simply was not relevant to his decision.

The Ninth Circuit has found that medical reports that are most recent are highly probative. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)) (medical evaluations even prepared several months before the hearing in a case where the claimant had a worsening condition were not substantial evidence sufficient to rebut more recent conclusions by a treating doctor). The records in this case discussed by the ALJ and dated after the June 2005 application for disability benefits are probative

1  of Plaintiff's claims, and the ALJ properly relied on them or discounted them, as
2  the case may be.  On the other hand, the Court finds that Dr. Salhotra's note, for
3  which no supporting medical records have been submitted and which is dated
4  more than two years prior to the application date, is neither significant nor
5  probative.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.
6  2003) (holding that "the ALJ is not required to discuss evidence that is neither
7  significant nor probative").  Moreover, as the ALJ found that Plaintiff had the
8  severe impairments of anxiety and depression, a finding not inconsistent with Dr.
9  Salhotra's note, any error was harmless.  Curry v. Sullivan, 925 F.2d 1127, 1131
10  (9th Cir. 1990) (harmless error rule applies to review of administrative decisions
11  regarding disability).

12  Accordingly, the Court finds there was no error in the ALJ's failure to
13  specifically mention Dr. Salhotra's note in his decision.

14  **B.**   **The Consultative Examiner's Opinion Regarding Plaintiff's**
15        **Personality Disorder with Borderline Traits.**

16  On October 12, 2005, consulting examiner, Kent Jordan, M.D., conducted a
17  psychiatric evaluation of Plaintiff.  (AR at 157-61.)  Dr. Jordan's Axis I diagnoses
18  were "marijuana abuse and dependence," and possible "marijuana-induced anxiety
19  and depressive disorder, intermittent, mild."  (Id. at 160.)  On Axis II, he
20  diagnosed Plaintiff with a "[p]ersonality disorder with borderline traits (the
21  claimant's borderline personality disorder includes immature and lack of
22  responsibility for self, being dependent on mother)."  (Id.)  In his Medical Source
23  Statement, Dr. Jordan further noted that Plaintiff "appears to have a borderline
24  personality disorder, which includes dependency on her mother.  She does not
25  appear motivated to work."  (Id.)  He also characterized Plaintiff's problem in part
26  as a "personality disorder with dependent trends."  Finally, with respect to work
27  functioning, Dr. Jordan noted:

28  Probable work functioning would depend upon her substance use and

abuse and upon her motivation to work.  If she had to work and thus was motivated to work and could maintain total sobriety for a sustained period, work functioning overall would be adequate.  She could perform detailed and complex tasks, maintain regular attendance, perform work consistently, perform work without special supervision, complete a normal workday and workweek, accept instructions from supervisors, interact with coworkers and the public, and deal with the usual stressors of competitive employment.

(Id.)

In his decision, the ALJ noted Plaintiff has the severe impairments of anxiety and depression and that Plaintiff "was reported to have a personality disorder."  (Id. at 16.)  Plaintiff contends the ALJ erred because he failed to find Plaintiff had a borderline personality disorder and failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Dr. Jordan who had provided that diagnosis.  (JS at 6, 8.)  The Court does not agree.

Substantial evidence supported the ALJ's decision.  Regarding diagnosis and treatment, the ALJ gave weight to the treating source physicians who provided an Axis II diagnosis code of V71.09, indicating no diagnosis on that Axis.  (See AR at 181, 183-84; see also id. at 195); see also DSM-IV, App. F at 866.  There is no case law or regulation requiring an ALJ to articulate a reason for embracing a treating source's diagnosis and rejecting a diagnosis of an examining source.  See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (discussing weight accorded to medical source opinions).

Moreover, the ALJ specifically noted that he gave "substantial weigh[t]" to Dr. Jordan's opinion because it was supported by clinical findings and consistent with the overall record.  (AR at 16.)  However, neither Dr. Jordan's Axis I nor Axis II diagnoses support a finding that Plaintiff is disabled.  Therefore, even if it

1  was error not to discuss this particular aspect of the opinion further, any error was

2  harmless.  <u>Curry</u>, 925 F.2d at 1131.

3  **C.   The State Agency Psychiatrist's Opinion Regarding Plaintiff's**

4  **Personality Disorder.**

5  Dr. Rosen, the State Agency reviewer, apparently adopted consulting

6  examiner Dr. Jordan's personality disorder diagnosis.  (<u>See</u> AR at 141, 148.)

7  Plaintiff contends the ALJ failed to consider Dr. Rosen's opinion and failed to

8  provide specific and legitimate reasons for that failure.  (<u>Id.</u> at 11, 12.)

9  The opinions of non-examining sources such as Dr. Rosen, generally are

10  given less weight than opinions of treating or examining sources.  <u>Orn</u>, 495 F.3d

11  at 631.  As a result, Dr. Rosen's opinion is accorded less weight than the opinion

12  of Plaintiff's treating physicians.  <u>Id.</u>  Also, as previously noted, the opinion of a

13  treating physician is favored over the opinion of a non-treating examining

14  physician such as Dr. Jordan.  <u>Id.</u>  Indeed, the ALJ's finding that Plaintiff's mental

15  impairments were severe, was more favorable to Plaintiff than the opinions of the

16  State Agency reviewers, Dr. Rosen and Dr. Paxton, who both found that

17  Plaintiff's mental impairments were not even severe at step two.

18  Because the ALJ properly considered the opinions of Plaintiff's treating

19  physicians, and also discussed the weight given to Dr. Jordan's opinions, error in

20  failing to mention the opinion of Dr. Rosen, if any, was harmless.

21  **D.   The ALJ Properly Considered Whether Plaintiff's Combination of**

22  **Mental Disorders Medically Equal a Listing.**

23  Plaintiff contends that although the ALJ "made the effort to state that the

24  Plaintiff's mental conditions did not demonstrate functional equivalence to 12.04

25  or 12.06 of the listing, his decision did not even consider a finding concerning that

26  of 12.08 criteria for personality disorders."  (JS at 15.)

27  As previously discussed, the State Agency physicians found Plaintiff's

28

7

1   mental impairments were not even severe at step two, let alone presumptively

2   disabling at step three.  (See, e.g., AR at 28, 30, 139-40, 151, 155.)  Dr. Rosen

3   expressly considered Listings 12.04, 12.08, and 12.09, and found no marked or

4   extreme limitations (id. at 151), concluding that Plaintiff's impairments were not

5   severe (id. at 141.)  The absence of marked or extreme limitations would likewise

6   preclude satisfaction of Listing 12.06 for anxiety-related disorders.  (See id. at

7   141, 151.)  Dr. Paxton confirmed the finding of non-disability.  (Id. at 30, 155.)

8   Although the ALJ found somewhat more severe limitations at step two than did

9   Drs. Rosen or Paxton, his conclusion that Plaintiff's combined impairments did

10   not meet or equal the criteria for any Listing was supported by their opinions.

11       Moreover, as there was no error with respect to the ALJ's failure to find

12   that Plaintiff's impairments included a personality disorder, Plaintiff's related

13   claim here lacks merit.

14   **E.    The ALJ Properly Developed the Record.**

15       In a letter dated May 21, 2007, Cathey Blau, LCSW, BCD, stated that

16   Plaintiff's treatment had focused on issues of persistent conflict with her fiancé

17   and her feelings of low self-esteem, especially since her pregnancy.  (Id. at 194-

18   95.)  Ms. Blau also stated that Plaintiff had been irritable and sad with frequent

19   verbal outbursts during conflicts with her fiancé.  (Id.)  Further, Ms. Blau noted

20   that Plaintiff's goals for treatment included reducing her outbursts and identifying

21   her stress triggers.  (Id.)  Finally, Ms. Blau stated that Plaintiff is a young mother

22   who is coping with the stress of motherhood despite her depression, anxiety, and

23   minimal assertiveness skills.  (Id.)

24       In his decision, the ALJ held that "[a]lthough Ms. Blau assigned the

25   clamant a GAF score of 50, indicating that her symptoms were moderate in nature,

26   Ms. Blau did not place any specific functional limitations on the claimant."  (Id. at

27   16.)

28

1    Plaintiff contends the ALJ should have contacted Ms. Blau in order to
2 ascertain Plaintiff's functional limitations in order to properly develop the record.
3 (JS at 18.)  The Court does not agree.

4    The ALJ has an independent duty to fully and fairly develop a record in
5 order to make a fair determination as to disability, even where the claimant is
6 represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir.
7 2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing
8 Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); see also Crane v. Shalala,
9 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th
10 Cir. 1983)).  Ambiguous evidence, or the ALJ's own finding that the record is
11 inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty
12 to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing
13 Smolen, 80 F.3d at 1288).  However, it is the plaintiff's burden to prove disability.
14 Baylis v. Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the
15 burden of proving that she is disabled" (quoting Meanel v. Apfel, 172 F.3d 1111,
16 1113 (9th Cir. 1999)).

17    The Court finds that the record before the ALJ was neither ambiguous nor
18 inadequate to allow for proper evaluation of the evidence, and substantial
19 evidence supported the ALJ's decision that Plaintiff was not disabled.  With
20 regard to Ms. Blau's note, the ALJ noted that other treatment records suggested
21 that Plaintiff's symptoms were controlled by medication and that the consultative
22 examiner did not find any functional limitations that would impact Plaintiff's
23 ability to perform simple, routine tasks.  (AR at 16.)  He then stated that to the
24 extent Ms. Blau may be suggesting that Plaintiff would be unable to perform
25 simple, routine tasks, which did not involve more than occasional public contact,
26 he rejected that suggestion based on the other record evidence.  (Id.)  As a result,
27 he properly accorded Ms. Blau's conclusions no significant evidentiary weight.
28

(Id.)  Accordingly, the ALJ had no duty to further develop the record.

## IV.

## **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED:  March 30, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge

10